## WADSWORTH, IN RE.

### Public Utilities Commission.

### No. 27864. Decided June 9, 1960.

Mr. *C. R. Rasor*, city solicitor, Mr. *James M. Forman*, assistant city solicitor, and Mr. *George W. Rooney*, for complainants.

Mr. *Sidney Griffith* of Messrs. *Power, Griffith & Jones*, for respondent Northern Ohio Telephone Company.

NATURE OF THE PROCEEDING

This proceeding arises out of an objection on the part of the Complainants to the practice of the Northern Ohio Telephone Company in terminating local calls by the use of automatic time disconnect equipment after the passage of a specific time interval in the Wadsworth Exchange area.

The Commission held public hearings on September 8 and 9, 1958, and June 30, 1959 in Wadsworth, Ohio; and on March 14, 1960 in Columbus, Ohio to consider the matters complained of and the proposal to eliminate automatic time disconnect.

DISCUSSION

At the hearings the following individuals offered testimony:

Mr. Frederick Neuenschwander, Executive Vice President, Wadsworth Chamber of Commerce, Wadsworth, Ohio;

Mr. Edwin L. Bates, Secretary-Treasurer of Bates & Geyland, Inc. and Treasurer and Managing Officer of the Peoples Savings and Loan Company, Wadsworth, Ohio;

Mr. William Reimer, First National Bank of Wadsworth, Ohio;

Mr. Robert R. Brown, Registered Pharmacist, Wadsworth, Ohio;

Mr. James C. Morris, Senior Vice President of Ohio Box Board, Wadsworth, Ohio;

Mr. Jack Sommers, Automobile Dealer, Wadsworth, Ohio;

Mrs. Raymond C. Daniels, Florist, Wadsworth, Ohio;

Mr. Roderick Lonier, Chief of Police, Wadsworth, Ohio;

Mr. G. F. Allen, Real Estate Broker, Insurance Agent and Loan Correspondents, Wadsworth, Ohio;

Mr. Richard Howard, Sales Administrator, Ohio Injector Company, Wadsworth, Ohio;

Fern Lilyerd, Bookkeeper of R. V. Hanson Sheet Metal, Wadsworth, Ohio;

Mr. Joseph George, Production & Purchasing Manager, Wadsworth Foundry Company, Wadsworth, Ohio;

Mr. Bruce Brickle, Manager of The Commercial Shop of the Wadsworth News Banner, Wadsworth, Ohio;

Mr. Amos Barnard, Optometrist, Wadsworth, Ohio;

Dr. Myra L. Johnson, Physician, Wadsworth, Ohio;

Mr. William C. Henry, President, Northern Ohio Telephone Company, Bellevue, Ohio; and

Mr. Norman W. Huddy, Chief Engineer, Telephone Service Department, Ohio Public Utilities Commission, Columbus, Ohio.

The witnesses from Wadsworth consisted primarily of business, professional, and individual line subscribers who testified at length in this proceeding that the automatic time disconnect feature of local telephone service frustrated the needs of subscribers in carrying out necessary conversations to the extent that inconvenience occurred, essential calls were sometimes cut off and in some instances telephone usage was discarded in favor of personal interviews. The Chief of Police, Dr. Johnson and Pharmacist Brown testified to experiencing the operation of the automatic time disconnect in telephone conversations dealing with health, safety and welfare. The general tenor of the testimony of the Wadsworth witnesses was that local telephone service with the automatic time disconnect feature was undesirable and should be eliminated, at least from individual lines.

The testimony of both the Commission and the Company witnesses was to the effect that modifying the Wadsworth central office equipment to eliminate the automatic time disconnect on individual lines only would be extremely costly. Witness Henry testified that the North Electric Company had indicated to him that it would be cheaper to replace the exchange in its entirety rather than to remove the time disconnect from individual lines only.

The Company's testimony was to the effect that the service with an automatic time disconnect feature was a benefit to multi-party subscribers who comprise approximately 86% of the Wadsworth Exchange subscribers, and that the use of time disconnect equipment was a method of attempting to provide multi-party users with an equitable and proportional use of their lines. However, testimony of certain Wadsworth subscribers and testimony of Mr. Huddy established that the automatic time disconnect feature, to some extent, can be circumvented by either party re-establishing the connection upon the operation of the cut-off. The Company admitted that this technique could be and was used to some extent, but stated that

a *"deterrent"* factor was achieved by the use of the time disconnect device and also that some attempts to re-establish the call would fail because other parties could seize the line during the interim.

The Company throughout this proceeding urges that the benefits of the removal of automatic time disconnect accrue primarily to the individual line subscribers at the expense of the multi-party subscribers. The Company takes the position that multi-party line service would be degraded without the institution of additional facilities to absorb the alleged increased load factor upon removal of the automatic time disconnect. The degree, if any, of the load factor increase, which the Company alleges would require additional equipment, was a matter of dispute and conflicting engineering points of view.

Subsequent to hearings conducted at Wadsworth, Ohio at which time complainant subscribers of the Northern Ohio Telephone Company in the Wadsworth Exchange testified that the service they were receiving was unsatisfactory because of the time disconnect feature of the service, the Company proposed a method of approaching the problem presented herein which it believed would be satisfactory to itself, the subscribers in Wadsworth, including both multi-party and individual line subscribers, and the Commission.

The Company indicated that it would offer to withdraw its existing Wadsworth tariffs and to file revised Wadsworth tariffs under Section 4909.18, Revised Code, which by tariff provision would eliminate automatic time disconnect in the Wadsworth Exchange area, adjust the individual line rate, and reduce line fill on multi-party service in the Wadsworth Exchange area to a maximum of four parties within the base rate area, and to a maximum of eight parties outside the base rate area without adjustment in multi-party line rates. The proposal of the Northern Ohio Telephone Company was reduced to writing and transmitted to complainants for their consideration.

A further hearing was held on March 14, 1960 to consider the proposals of the Company and the position of the complainants on the proposal. At this continued hearing testimony was offered by William C. Henry, President of Northern Ohio Telephone Company, in substance stating that the service

being provided in the Wadsworth Exchange embodying the feature of time disconnect on local calls was the same service that the Company offered its other subscribers in other exchanges of the Company with one or two exceptions. Witness Henry restated the Company's position that the furnishing of local service embodying time disconnect in areas of comparatively large multi-party development made it possible for multiparty subscribers to more effectively use and enjoy telephone service provided by the Company in that the automatic time. disconnect would shorten holding time and provide a better opportunity to subscribers to avail themselves of the use of the equipment.

Witness Henry testified that the Company was desirous of providing a telephone service that suits the needs, requirements and desires of its subscribers to the extent the same can be secured. This witness testified that in the best judgment of the Company time disconnect could be eliminated and service levels maintained by the Company changing from, a service with time disconnect and maximum party line fills of five within the base rate area and ten outside the base rate area, to a service without time disconnect and with a reduction in party line fills to a maximum of four within the base rate and eight outside of the base rate area; that to accomplish the regrading associated with the lowering of maximum fills on multi-party services and elimination of time disconnect, a sufficient number of additional lines (estimated at 58) and additional central office equipment must be provided in order that this service could be made available to all subscribers maintaining service levels; and that the elimination of time disconnect would immediately require additional finders and connectors of between nine and thirteen per cent to maintain normal margins of equipment.

The Commission received into evidence Commission Exhibit A-1, being the written proposal of the Northern Ohio Telephone Company to eliminate the automatic time disconnect in the Wadsworth Exchange area, and specifying in detail the additional finders, connectors, and central office equipment the Company would add in the Wadsworth Exchange area if the proposal were approved by the Commission.

In essence the proposal embodies a new tariff filing, which

would in effect withdraw ten and five party service, and the use of the automatic time disconnect, as now offered in the Wadsworth Exchange and simultaneously substitute a new service offering consisting of eight and four party service which, according to Witness Henry, would constitute a 20% upgrading, coupled with the elimination of the automatic time disconnect. Placing this proposal in effect would mean that individual line subscribers would no longer be subject to the automatic time disconnect, to which they have complained in this proceeding, and that the multi-party subscribers, coincident with the removal of the automatic time disconnect, would obtain an estimated 20% upgrading of their service.

The cost of the additional line finders, connectors, central office lines, and distribution lines in the Wadsworth Exchange area to upgrade multi-party service and remove automatic time disconnect was estimated by Witness Henry at $40,900. The proposal embodies an adjustment in its Wadsworth individual lines rates to become effective coincident with the offering of the new service. The adjustments contained in the proposal are as follows: individual resident line service, 10c per month upward adjustment; individual business line service, 20c per month upward adjustment; PBX trunk lines, 25c per month upward adjustment. The additional revenues from the proposed rate adjustments would amount to $104.60 per month.

Prior to the hearing on March 14, 1960, the Complainants reviewed the proposal of the Northern Ohio Telephone Company, and at the March 14, 1960 hearing the Complainants offered into evidence Complainant's Exhibit No. 3, being Resolution No. 687, adopted by the Council of the City of Wadsworth on March 1, 1960, authorizing Solicitor Rasor to appear before the Public Utilities Commission of Ohio in this proceeding and to concur in the proposal of the Northern Ohio Telephone Company.

The Complainants further offered into evidence Complainant's Exhibit No. 4, being Resolution No. 688, adopted by the Council of the City of Wadsworth on March 8, 1960, requesting the Commission to require the completing of the upgrading of the multi-party lines, proposed by the Northern Ohio Telephone Company, within 90 days after the removal of the automatic time disconnect equipment.

At the March 14, 1960 hearing Mr. Fred B. Neuenschwander, Executive Vice President of the Wadsworth Chamber of Commerce, testified that the Chamber of Commerce had received the written statement of the Northern Ohio Telephone Company (Commission's Exhibit No. A-1) and at a special meeting on the 3rd Monday in February took action supporting the proposal. He further testified that a thorough check had been made of "single party users and business phone users" and that he could definitely state "that the single party line users favor the proposal."

While this Commission has never issued a formal opinion on the adequacy of telephone service utilizing an automatic time disconnect device, the matter has been considered in Pennsylvania.

The Pennsylvania Supreme Court in 1956 in *York Telephone & Telegraph Company* v. *Pennsylvania Public Utilities Commission*, 181 PA Super. Ct.-11, 121 A 2nd, 605, stated: "Where it further appeared that the company employed a cut-off device which terminated calls in local service areas after five or six minutes; that the purpose was to avoid additional capital expenditures; and that the Commission found that the use of a cut-off device resulted in inadequate, inefficient, and unreasonable service; it was held that (a) the Commission had the power, of its own motion in response to complaints lodged with it, to question the quality of service rendered by the company as affected by the operation of the cut-off device; and (b) the Commission did not err in directing the company to eliminate the use of the cut-off device within a reasonable time." The headnote in 14 PUR 3d, 89, stated: "the use of a cut-off device to abbreviate telephone conversations may be a matter within the managerial discretion but unrestricted service should be the objective and use of the device may not be indefinitely continued where the company has capital or credit necessary to finance additional facilities." In its decision the court of Pennsylvania upheld and affirmed that portion of the decision of the Pennsylvania Public Utilities Commission ordering a telephone company to eliminate the use of time cut-off devices.

Individual line subscribers may be more likely to seek the elimination of the automatic time disconnect on local service. Frequently multi-party line users split on the question for fear

of a subsequent degrading of their service. While subscribers may differ on the question of the time limit feature on local calls, a time limit is not placed on toll calls whether originating or terminating in either a multi-party or individual line service. It would appear that the calling requirement of a particular local call could reasonably utilize a period of time in excess of the time period cycle allocated for Wadsworth local calls. On such local calls, where the time required to complete the communication exceeds the period of time allowed by the automatic cut-off device, the communication requirement of the parties to the call are not met. However, removing the time disconnect feature from multi-party lines without offering to multi-party line subscribers some understandable improvement over presently allowable service might cause such subscribers concern, regardless of the basis in fact for such concern. The proposal of the Company to make a new service offering to Wadsworth Exchange subscribers not only eliminating the time limit feature of local service, but also, upgrading of multi-party line offering to maximum line fills of 4 in the base rate area, and 8 outside the base rate area would allay the fears of multi-party line subscribers concerning the degrading of their service and meet the requirements those subscribers in the Wadsworth Exchange area demanding the removal of the time limit on local calls.

The substitution of a new type of service for the Wadsworth Exchange area as proposed by the Respondent in order to satisfy the demands expressed by the Complainants to replace the existing type of service rendered the Wadsworth Exchange area will inevitably result in the furnishing of a different kind of service than that on which existing rates and charges have been promulgated for this company, because the service the Respondent proposes to furnish and which is desired by the Complainants is a service not now being rendered by Respondent in its Wadsworth Exchange.

This Commission is of the opinion that pursuant to the provisions of Section 4909.18, Revised Code, it has the authority to authorize the withdrawal of the existing service coincident with the establishing of the proposed service, as a new service, and authorize the Respondent, Northern Ohio Telephone Company, to file an appropriate schedule consistent with the testi-

mony of Witness Henry on March 14, 1960 and Commission Exhibit A-1 and to authorize the Company to make such schedules effective without further notice or hearing, inasmuch as the withdrawal of the existing schedules and the filing of the new schedules would not increase any present rate, joint rate, toll, classification, charge, or rental for service now being rendered in the Wadsworth Exchange area.

FINDINGS:

The Commission finds:

(1) That the instant matter is properly before the Commission;

(2) That publication has been made as required by law and the Commission has jurisdiction to hear and determine the issues presented;

(3) That the Complainants have established that there is, insofar as individual line subscribers in the Wadsworth Exchange area are concerned, a present and existing communication need and requirement for local service without the time limit feature;

(4) That the Respondent, Northern Ohio Telephone Company, submitted to the Commission and the Complainants a proposal embodying the elimination of the automatic time disconnect; the adjustment of individual line rates; limiting the line fill on multi-party lines in the base rate area to four and outside the base rate area to eight; and the addition of fifty-eight lines of central office equipment, $10,000 of outside plant, and 13% more finders and connectors in the Wadsworth Exchange area;

(5) That the proposal of the Company satisfied the Complainants, as indicated on the record herein, and protects and improves the service of multi-party line subscribers;

(6) That the changes proposed by the Northern Ohio Telephone Company in its filed tariff schedules would constitute a new telephone service offering for the Wadsworth Exchange area within the meaning of Section 4909.18, Revised Code;

(7) That the Commission has authority under the provisions of Section 4909.18, Revised Code, to authorize the Respondent, Northern Ohio Telephone Company, to file and make effective revised tariff schedules to establish a new service offering in the Wadsworth Exchange area;

(8) That the revision in tariff schedules contemplated by the proposal of Northern Ohio Telephone Company will not increase any rate, joint rate, toll, classification, charge, or rental for service now being rendered by the Northern Ohio Telephone Company to its Wadsworth Exchange subscribers;

(9) That the Commission is satisfied that the withdrawal of the existing Wadsworth local service offering and the substitution of a new Wadsworth local service offering embodying local service without the time limit feature will not in any respect be unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law; and

(10) That the Northern Ohio Telephone Company should file and make effective revised tariff sheets for the Wadsworth Exchange area encompassing therein the proposal hereinabove referred to within 90 days from the date of this order.

ORDER

It is therefore,

ORDERED, That the Northern Ohio Telephone Company file and make effective, within 90 days from the date of this order, revised Wadsworth Exchange tariffs consistent with the findings above. It is further,

ORDERED, That the Northern Ohio Telephone Company herein be, and it is, authorized to file such schedule sheets as may be required in order to reflect such revisions thereof as may become effective, pursuant to orders of this Commission, to become effective on the date to be shown thereon, which date shall be subsequent to the date of the filing of two complete printed copies of said sheets with this Commission. It is further,

ORDERED, That nothing herein shall be deemed to be binding upon this Commission in any subsequent investigation or proceeding involving the justness or reasonableness of any rate, charge, rule or regulation.

THE PUBLIC UTILITIES COMMISSION OF OHIO

| | |
|---|---|
| Entered in Journal | Edward J. Kenealy, Chairman |
| June 9, 1960 | Frances McGovern, |
| A true copy: | Commissioner |
| R. Martin Galvin, Secretary | Everett H. Krueger, Jr., |
| | Commissioner |